### J. D. COTTLE, JR., v. W. B. F. JOHNSON.

(Filed 14 April, 1920.)

**1. Husband and Wife—Alienation of Wife's Affection—Malice—Damages.**

In order for the husband to recover punitive damages for the alienation of his wife's affection he must show directly or by implication that the act complained of was maliciously done, though not necessarily that it was done with ill will.

**2. Husband and Wife—Alienation of Wife's Affection—Punitive Damages.**

Punitive damages may be awarded in the discretion of the jury, in the husband's action for alienating the affections of his wife, when the defendant's act was by fraud, malice, recklessness or oppression or other willful and wanton aggravation on his part.

**3. Same—Criminal Conversation.**

The husband has personal and exclusive rights with regard to the person of his wife, and criminal conversation with her by another, notwithstanding her consent, constitutes an invasion of his rights.

**4. Same—Instruction—Evidence—Appeal and Error—Reversible Error.**

Where there is allegation and conflicting evidence that the defendant alienated the affections of the plaintiff's wife and also had criminal conversation with her, it is error for the trial judge to charge the jury that they may award punitive damages, in their discretion, without instructing them upon the law relating to the principles upon which punitive damages may only be awarded.

**5. Husband and Wife—Alienation of Wife's Affection—Measure of Damages.**

Compensatory damages awarded to the husband for the alienation of his wife's affection are for the loss of the society of his wife, and her affection and assistance, and for his humiliation and mental anguish.

**6. Husband and Wife—Alienation of Wife's Affection—Evidence—Conversations—Correspondence—Collusion.**

Where in the husband's action to recover damages for the alienation of the wife's affection there is evidence that the plaintiff and his wife lived happily together for several years when defendant induced and enticed the wife to leave her husband and continue to live separate from him, and to the contrary, that defendant's improper treatment of his wife had caused her to do so, it is competent, as a part of the *res gestae*, to show the feelings existing between the husband and wife prior to and after defendant's alleged wrong, by conversations and correspondence between them, though not as substantive evidence of the defendant's wrong, and the court should, by proper instructions, confine their consideration of this evidence within its proper bounds, to avoid affording opportunity for collusion.

**7. Issues—Compensatory Damages—Punitive Damages—Courts—Discretion.**

Where in an action for damages there is allegation and conflicting evidence sufficient to sustain a verdict of both compensatory and punitive damages, the better practice is to separate these issues, though this matter is addressed to the discretion of the trial court.

APPEAL by defendant from *Allen, J.,* at the September Term, 1919, of PENDER.

This is an action to recover damages for the alienation of the affections of the plaintiff's wife, and for criminal conversation.

The evidence of the plaintiff tended to show that he and his wife were married in 1913, and that they lived happily together until July, 1918, when the defendant induced and enticed her to leave him, and that she has lived separate from him since that time.

Also, that the relationship between the defendant and his wife was improper and criminal.

The evidence in behalf of the defendant tended to prove that he did not induce or entice the wife to leave the plaintiff; that she left him because of his improper treatment of her, and voluntarily went to the home of the defendant, where she lived with him and his wife as a companion and paying for her board.

His Honor admitted evidence of conversations between the plaintiff and his wife prior to the separation, and of letters written by them, and the defendant excepted.

The charge of his Honor on the issue of damages was as follows: "Upon that issue there is no other rule that I am aware of as to how

you will proceed except this: (If he is entitled to damages at all, he would be entitled to reasonable compensation for the injury done him—and reasonable compensation is one of these things you cannot measure like you would measure out corn or determine the price on a horse, or something of that kind; you have to consider all the circumstances, and say what, in your opinion, would be reasonable compensation to him for his damages.) To so much of his Honor's charge as appears in parentheses above the defendant, in apt time, excepted."

"And then, if you find he himself has been guilty of bad conduct towards his wife you may consider that by way of reducing the damages that you think he would otherwise be entitled to, and then say what that reasonable damage would be; and, then, you may (if you see fit, in your discretion, add to that what we call punitive damages—that is, damages by way of punishment—if you think it ought to be done—or exemplary damages, as it is sometimes called—and then say, in considering all those matters, what damages he would be entitled to). To so much of his Honor's charge as appears in parentheses, the defendant, in apt time, excepted."

The jury returned the following verdict:

"1. Did the defendant alienate the affections of the plaintiff's wife, and cause her to separate from her husband, the plaintiff, as alleged in the complaint? Answer: 'Yes.'

"2. Did the defendant seduce and carnally know the plaintiff's wife, as alleged in the complaint? Answer: 'No.'

"3. If so, what amount of damages has the plaintiff sustained? Answer: '$8,000.' "

There was a judgment for the plaintiff, and the defendant excepted and appealed.

*George R. Ward and C. E. McCullen for plaintiff.*
*McClammy & Burgwin and Stevens & Beasley for defendant.*

ALLEN, J. The complaint alleges two causes of action, one for alienation of the affections of the wife of the plaintiff, and the other for criminal conversation.

The gravamen of the first cause of action is the deprivation of the husband of his conjugal right to the society, affection, and assistance of his wife, and of the second the defilement of the wife by sexual relation.

In Criminal Conversation: "The authorities show the husband has certain personal and exclusive rights with regard to the person of his wife, which are interfered with and invaded by criminal conversation with her; that such an act on the part of another man constitutes an assault even when, as is almost universally the case as proved, the wife

in fact consents to the act; because the wife is in law incapable of giving any consent to affect the husband's right as against the wrongdoer, and that an assault of this nature may properly be described as an injury to the personal rights and property of the husband, which is both malicious and willful" (*Tinker v. Colwell*, 193 U. S., 473), and in an action for alienation of the affection it must be shown that the conduct of the defendant was intentional, and the defendant "is not liable unless he acted maliciously or from improper motives implying malice in law, whether he is a parent of or a stranger to the plaintiff's spouse." 13 R. C. L., 1466.

"It may be laid down as a general rule, at least where there is no element of seduction or adultery, that a defendant in an action for alienation of affections is not liable unless he acted maliciously, whether he is a parent of or stranger to the plaintiff's spouse. It is true that, as is hereinafter shown, it requires more evidence to establish malice on the part of the parent than is necessary in the case of a stranger, but this difference is an unevidential one merely. · . . . The term 'malice' does not necessarily mean that which must proceed from a spiteful, malignant, or revengeful disposition, but implies merely a conduct injurious to another, though proceeding from an ill-regulated mind not sufficiently cautious before it occasions the injury. If the conduct is unjustifiable, and actually caused the injury complained of, malice in law will be implied. *Boland v. Stanley, supra; Westlake v. Westlake*, 34 Ohio St., 621; 32 Am. Rep., 397." *Geromini v. Brunelli*, 46 L. R. A. (N. S.), 465, note.

Malice is also defined as a disposition to do a wrong without legal excuse (*R. R. v. Hardware Co.*, 143 N. C., 54), or as a reckless indifference to the rights of others. *Logan v. Hodges*, 146 N. C., 44.

It does not necessarily mean ill-will, and includes a wrongful act knowingly and intentionally done without just cause or excuse. *Stanford v. Grocery Co.*, 143 N. C., 427. When understood in this sense, and as a necessary element in establishing the plaintiff's cause of action for alienation of affections, the finding upon the first issue that the defendant alienated the affections of the plaintiff's wife and caused her to separate from him, as alleged in the complaint, that is, maliciously, entitled the plaintiff to recover compensatory damages, which includes loss of the society of his wife, loss of her affection and assistance, as well as for his humiliation and mental anguish, but the right to punitive damages does not attach as matter of law, because the first issue was found for the plaintiff.

"The right under certain circumstances to recover damages of this character is well established with us; but, as said in *Holmes v. R. R.*, 94 N. C., 318, such damages are not to be allowed 'unless there is an

element of fraud, malice, gross negligence, insult, or other cause of aggravation in the act which causes the injury.' And again, in the concurring opinion in *Ammons v. R. R.,* 140 N. C., 200, it is said: 'Such damages are not allowed as a matter of course, but only when there are some features of aggravation, as when the wrong is done willfully and under circumstances of oppression, or in a manner which evinces a reckless and wanton disregard of the plaintiff's rights.' " *Stanford v. Grocery Co.,* 143 N. C., 427.

"This Court has said in many cases that punitive damages may be allowed, or not, as the jury see proper, but they have no right to allow them unless they draw from the evidence the conclusion that the wrongful act was accompanied by fraud, malice, recklessness, oppression, or other willful and wanton aggravation on the part of the defendant. In such cases the matter is within the sound discretion of the jury." *Hayes v. R. R.,* 141 N. C., 199.

"In this Court the doctrine is well settled that in actions of tort the jury, in addition to the sum awarded by way of compensation for the plaintiff's injury, may award exemplary, punitive, or vindicative damages, sometimes called 'smart money,' if the defendant has acted wantonly, or oppressively, or with such malice as implies a spirit of mischief or criminal indifference to civil obligations; but such guilty intention on the part of the defendant is required in order to charge him with exemplary or punitive damages." *R. R. v. Prentice,* 147 U. S., 101.

"While every legal wrong entitles the party injured to recover damages sufficient to compensate for the injury inflicted, not every legal wrong entitles the injured party to recover exemplary damages. To warrant the allowance of such damages the act complained of must not only be unlawful, but it must also partake somewhat of a criminal or wanton nature. And so it is an almost universally recognized rule that such damages may be recovered in cases, and in only such cases, where the wrongful act complained of is characterized by some such circumstances of aggravation as willfulness, wantonness, malice, oppression, brutality, insult, recklessness, gross negligence, or gross fraud on the part of the defendant." 8 R. C. L., 585.

"In order that there may be a recovery of exemplary damages, there must be present in the circumstances some element of malice, fraud, or gross negligence, otherwise the measure of damages is such an amount as will constitute a just and reasonable compensation for the loss sustained, and nothing more. In other words, the wrongs to which exemplary damages are applicable are those which, besides violating a right and inflicting actual damages, import insult, fraud, or oppression, and are not merely injuries, but injuries inflicted in a spirit of wanton disregard of the rights of others." 17 C. J., 974.

It follows, therefore, as it was incumbent on the plaintiff to show circumstances of aggravation in addition to the malice implied by law from the conduct of the defendant in causing the separation of the plaintiff and his wife, which was necessary to sustain a recovery of compensatory damages, and as the evidence was conflicting as to the conditions which brought about the alienation and separation, it was error to charge the jury they could award punitive damages without explaining to them that such damages could not be awarded unless the defendant acted from personal ill-will to the plaintiff, or wantonly, or oppressively, or from reckless indifference to his rights.

This is not the case of a charge, correct within itself, which fails to present the views of one or the other of the parties, who cannot complain in the absence of prayers for instructions, because here the instruction given is erroneous. The jury could not award punitive damages merely upon the finding on the first issue, as his Honor instructed them they could do.

The only other exception requiring notice is to the conversations between the plaintiff and his wife, and to the letters.

This evidence was not competent as substantive evidence of the guilt of the defendant, but was admissible for the purpose of showing the relationship between the plaintiff and his wife before they became associated with the defendant and afterwards.

"For the purpose of showing the terms on which the spouse lived, evidence of their declarations, letters to each other, etc., are admissible. So the state of a spouse's affections after the alleged alienation of his or her affections is material, and for the purpose of showing that his or her affections had been in fact alienated, evidence of his or her declarations and conduct showing a loss of affections is admissible." 13 R. C. L., 1476.

"When an act is done to which it is necessary to ascribe a motive, it is always considered that what is said at the time, from whence the motive may be collected, is a part of the *res gestæ*. It was necessary to explain the reason the witness advised her to leave her husband, and for this purpose her complaints of ill treatment, with the marks of violence on her person, were competent testimony. When the conduct of the wife is in question, her declarations have been held admissible for her husband in an action against him." *Gilchrist v. Bale,* 34 A. D., 471.

"The mischief is a continuing one, going on from day to day, and becoming worse with the delay. The principles, therefore, which always allowed inquiry into the wife's feelings and conduct prior to and at the time of the seduction, must permit such inquiry during the whole period of alienation. The law cannot very well shut out what to every intelligent person must appear significant and free from any danger of fabri-

cation and falsehood. Most of this evidence is explanatory of the wife's residence with her parents, and is the only means, except examining her as a witness, of comprehending it. It is daily conduct, explained by concurrent declarations, and we do not think it is beyond the scope of inquiries always allowed in such cases." *Edgell v. Francis,* 66 Mich., 305.

In *Rudd v. Rounds,* 64 Vt., 439, *Ross, C. J.,* says: "This is an action brought to recover damages for an alienation of the affections of the plaintiff's wife, and thereby causing her to leave him. The wife's state of mind and regard for the plaintiff at the time she became acquainted with the defendant, and during the time of that acquaintance, until she left the plaintiff, and if there was a change during that period, whether caused by the conduct of the plaintiff, or the wrongful conduct of the defendant, were proper subjects of inquiry and investigation. The condition of her mind in regard to her husband, and what caused it to change from time to time, could be ascertained by her acts and conduct towards the plaintiff and defendant respectively, and by their acts and conduct towards her, and by her and their expression of their respective mental state towards and for each other, and of the causes thereof. The nature of the suit, and what was involved in its solution, opened a broad field of inquiry and investigation. The wrongful alienation of her affection by the defendant, resulting in her leaving, and refusing to live with the plaintiff, as his wife, constituted the gist of the action. Her leaving and refusal bore upon whether her affections had been alienated from some cause, and if caused by the wrongful conduct of the defendant, upon the amount of damages recoverable. What she said concurrent with, and while she was leaving the plaintiff's house, and on her way to the house where the defendant was stopping, and when she reached there, and her refusal at the request of the defendant to return to her husband, characterizing and giving the reason for her leaving, and refusal to return, were a part of the *res gestæ* of the leaving and refusal to return, and admissible in evidence."

We recognize the danger of evidence of this kind and the opportunity it affords for collusion, and for this reason it should be kept within proper bounds, with instructions as to how it should be considered, but in this case there was not only no collusion between husband and wife, but it appears that the wife was a witness for the defendant, and sustained his contentions throughout her testimony.

We have carefully considered the other exceptions and find no error in them.

The prayers for instructions were given in substance, and the other exceptions and to the charge are without merit.

This appeal illustrates the wisdom of separating the issues of compensatory and punitive damages, which is, however, a matter addressed to the discretion of the court.

For the error in the charge, a new trial is ordered on the issue of damages.

Partial new trial.

BROWN, J., dissenting.