DONALD EUGENE MISENHEIMER, Plaintiff v. JAMES CLAYTON BURRIS
AND RANDALL BURRIS, Defendants

No. COA04-445-2

(Filed 5 June 2007)

### Evidence— privileged communications—limited waiver of clergy-communicant privilege

The trial court did not abuse its discretion in a criminal conversation case by permitting plaintiff a limited waiver of the clergy-communicant privilege to allow defendant to examine an ordained minister regarding a July 1997 counseling session, but refusing to allow defendant to elicit testimony from the minister regarding other counseling sessions involving plaintiff, because: (1) the trial court and the Court of Appeals both conducted an in camera review and concluded that nothing in the records specifically supported defendant's contention that plaintiff had knowledge of the affair prior to April 1997, the start date of the statute of limitations; (2) plaintiff properly asserted his clergy-communicant privilege for his counseling sessions with the minister under N.C.G.S. § 8-53.2, and plaintiff could assert or waive in part the privilege regarding his statements; and (3) defendant failed to show he suffered prejudice from his inability to examine the minister regarding all counseling sessions with plaintiff because he could have called plaintiff's ex-wife as a witness and inquired of her when she had told plaintiff of her affair with defendant without seeking a further waiver of plaintiff's clergy-communicant privilege.

Appeal by defendant James Clayton Burris from judgment entered 20 May 2003 by Judge Michael E. Beale in Stanly County Superior Court. A divided panel of this Court reversed the judgment by opinion filed 5 April 2005. See Misenheimer v. Burris, 169 N.C. App. 539, 610 S.E.2d 271 (2005) (Tyson, J., dissenting). Upon remand by opinion filed 17 November 2006 from the North Carolina Supreme Court. See Misenheimer v. Burris, 360 N.C. 620, 637 S.E.2d 173 (2006).

Walker & Bullard, by Daniel S. Bullard, for plaintiff-appellee.

Tucker & Singletary, P.A., by William C. Tucker, for defendant-appellant.

TYSON, Judge.

This Court initially addressed James Clayton Burris's ("defendant") appeal from judgment entered after a jury found him to be liable to Donald Eugene Misenheimer ("plaintiff") for criminal conversation. A divided panel of this Court reversed the trial court by opinion filed 5 April 2005. See *Misenheimer v. Burris*, 169 N.C. App. 539, 610 S.E.2d 271 (2005) (Tyson, J. dissenting). On 10 May 2005, defendant appealed as a matter of right to the North Carolina Supreme Court based on the dissenting opinion. Defendant petitioned for a writ of certiorari to the North Carolina Supreme Court to review additional issues not addressed by this Court, which was granted on 6 October 2005. *See Misenheimer v. Burris*, 360 N.C. 65, 621 S.E.2d 629 (2005). Our Supreme Court reversed and remanded to this Court for consideration of defendant's remaining assignment of error. *See Misenheimer v. Burris*, 360 N.C. 620, 637 S.E.2d 173 (2006). On remand, we find no error.

## I. Background

A detailed recitation of the allegations, rulings, and verdict leading up to this appeal is set forth in both prior opinions of our Supreme Court, *Misenheimer v. Burris*, 360 N.C. 620, 637 S.E.2d 173 (2006), and this Court, *Misenheimer v. Burris*, 169 N.C. App. 539, 610 S.E.2d 271 (2005).

Plaintiff and Rebecca Ann Misenheimer ("Mrs. Misenheimer") married in 1971. Plaintiff and defendant met in the 1970s and became friends and business associates. Their families also became friends and socialized.

In February 1996, Mrs. Misenheimer told plaintiff she wanted a divorce. On 15 March 1997, Mrs. Misenheimer separated from plaintiff and moved out of their marital home. Their divorce was finalized in 2000.

On 12 April 2000, plaintiff filed a complaint alleging defendant had alienated the affections of and engaged in criminal conversation with Mrs. Misenheimer. The case proceeded to trial on 17 February 2003.

At trial, plaintiff testified he and defendant had a conversation in 1996. Plaintiff gave defendant a copy of the Ten Commandments and asked defendant to read it aloud. After defendant read, "Thou shall not commit adultery," he stated, "I didn't ever have sex with your

MISENHEIMER v. BURRIS

[183 N.C. App. 408 (2007)]

wife. I may have done some things that I shouldn't have, but I didn't have sex with your wife."

Plaintiff testified he learned Mrs. Misenheimer had engaged in an affair with defendant in July 1997. Plaintiff also testified Mrs. Misenheimer admitted the affair during a counseling session with Gary McFarland ("McFarland"), an ordained minister. Plaintiff further testified that on or about the day of the counseling session, Mrs. Misenheimer told plaintiff in a parking lot that she had engaged in an "affair of the hands and the heart" with defendant.

During defendant's case-in-chief, defendant called McFarland to testify about the July 1997 counseling session. Plaintiff objected and argued defendant's questions violated the statutory clergy-communicant privilege under N.C. Gen. Stat. § 8-53.2. Plaintiff invoked his privilege, but later waived his privilege to allow McFarland to testify to communications on the date Mrs. Misenheimer allegedly told plaintiff and McFarland during counseling that she had engaged in an affair with defendant. The trial court allowed McFarland to testify, but limited defendant's inquiry to the date plaintiff discovered Mrs. Misenheimer had allegedly engaged in an affair with defendant.

McFarland testified he is an ordained minister. Plaintiff and Mrs. Misenheimer had sought spiritual and marriage counseling from him. McFarland testified plaintiff attended a counseling session with him on 23 July 1997, but his counseling records did not indicate Mrs. Misenheimer was present at that session. McFarland also testified that 23 July 1997 was the only counseling session he had with plaintiff that month. McFarland testified he could not specifically recall whether Mrs. Misenheimer stated in July 1997 that she had engaged in an affair with defendant.

The jury found defendant had engaged in criminal conversation with Mrs. Misenheimer and that plaintiff had filed his complaint within the time allowed by the applicable statute of limitations. The jury awarded plaintiff $100,001.00 in actual damages and $250,000.00 in punitive damages. Defendant appealed.

On 5 April 2005, a divided panel of this Court held the trial court erred when it applied the discovery rule to plaintiff's criminal conversation claim. *Misenheimer v. Burris*, 169 N.C. App. 539, 610 S.E.2d 271 (2005) (Tyson, J., dissenting). This Court held the statute of limitations barred plaintiff's claim for criminal conversation. *Id.* On 10 May 2005, defendant appealed as a matter of right to our Supreme

**MISENHEIMER v. BURRIS**

[183 N.C. App. 408 (2007)]

Court based on the dissenting opinion. Defendant petitioned for a writ of certiorari to our Supreme Court to review additional issues not addressed by this Court, which was granted on 6 October 2005. *See Misenheimer v. Burris*, 360 N.C. 65, 621 S.E.2d 629 (2005).

On 17 November 2006, our Supreme Court reversed the majority's opinion and held the discovery rule applied to claims of criminal conversation, and plaintiff's claim was not barred by the statute of limitations. The Supreme Court remanded to this Court with instructions to address defendant's remaining assignment of error not previously addressed by this Court. *Misenheimer v. Burris*, 360 N.C. 620, 637 S.E.2d 173 (2006).

### II. Issue

Defendant argues the trial court erred by permitting plaintiff a limited waiver of the clergy-communicant privilege to allow an examination of McFarland regarding the July 1997 counseling session, but refusing to allow him to elicit testimony from McFarland regarding other counseling sessions involving plaintiff. We disagree.

### III. Standard of Review

We review the trial court's ruling for an abuse of discretion. *State v. Efird*, 309 N.C. 802, 806, 309 S.E.2d 228, 231 (1983). A trial court's actions constitute an abuse of discretion "upon a showing that a court's actions 'are manifestly unsupported by reason' " and " 'so arbitrary that [they] could not have been the result of a reasoned decision.' " *State v. T.D.R.*, 347 N.C. 489, 503, 495 S.E.2d 700, 708 (1998) (quoting *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 832 (1985)).

### IV. Analysis

Defendant argues the trial court erred by allowing an examination of McFarland regarding the July 1997 counseling session upon a limited waiver by plaintiff, but refusing to allow him to question McFarland regarding other counseling sessions involving plaintiff. Defendant asserts the trial court's ruling precluded him from establishing plaintiff had "discovered" his alleged affair on an earlier date to trigger the statute of limitations. We disagree.

N.C. Gen. Stat. § 8-53.2 (2005) provides:

No priest, rabbi, accredited Christian Science practitioner, or a clergyman or ordained minister of an established church shall be

MISENHEIMER v. BURRIS

[183 N.C. App. 408 (2007)]

competent to testify in any action, suit or proceeding concerning any information which was communicated to him and entrusted to him in his professional capacity, and necessary to enable him to discharge the functions of his office according to the usual course of his practice or discipline, wherein such person so communicating such information about himself or another is seeking spiritual counsel and advice relative to and growing out of the information so imparted, provided, however, that *this section shall not apply where communicant in open court waives the privilege conferred.*

(Emphasis supplied).

The General Assembly enacted an earlier statute codifying the clergy-communicant privilege in 1959. *State v. Barber*, 317 N.C. 502, 510, 346 S.E.2d 441, 446 (1986). "It contained a provision that the trial court could compel disclosure in its discretion when necessary to the proper administration of justice." *Id.* (citing 1959 N.C. Sess. Laws 696).

"The statute was amended in 1967 to remove the provision by which the trial court could compel such testimony to satisfy the ends of justice." *Id.* (citing 1967 N.C. Sess. Laws 794.). "The 1967 amendments reveal the General Assembly's intent *to remove from the trial courts any discretion to compel disclosure* when the clergy-communicant's privilege exists." *Id.* (emphasis supplied). The General Assembly enacted the clergy-communicant privilege as "absolute by not including any provision for a judge to 'compel disclosure if in his opinion disclosure is necessary to a proper administration of justice.'" *In re Investigation of the Death of Miller,* 357 N.C. 316, 330, 584 S.E.2d 772, 783 (2003) (quoting N.C. Gen. Stat. § 8-53).

N.C. Gen. Stat. § 8-53.2 states two requirements in order for the clergy-communicant privilege to apply: (1) the person must be seeking the counsel and advice of his minister and (2) the information must be entrusted to the minister as a confidential communication. *State v. West,* 317 N.C. 219, 223, 345 S.E.2d 186, 189 (1986). The communicant may waive his clergy-communicant privilege in open court. N.C. Gen. Stat. § 8-53.2.

Plaintiff testified he discovered in July 1997 that Mrs. Misenheimer had engaged in an affair with defendant. He testified on *voir dire* that he learned about his wife's affair with defendant during a counseling session with McFarland.

Defendant called McFarland as a witness during his case in chief. The trial court ruled, after a *voir dire* hearing and over plaintiff's objection, that defendant could call McFarland as a witness and plaintiff could then choose whether to claim or waive his privilege in open court. The trial court ruled that plaintiff could waive the privilege concerning the 23 July 1997 counseling session without waiving the privilege regarding all other counseling sessions with the minister. Plaintiff waived the privilege regarding the 23 July 1997 counseling session.

McFarland testified he could not recall, and his counseling notes did not indicate, whether: (1) Mrs. Misenheimer was present at a July 1997 counseling session or (2) that Mrs. Misenheimer had told McFarland in July 1997 that she had engaged in an affair with defendant.

McFarland also testified that he keeps a record of all of his counseling sessions and he had the records of the sessions with the Misenheimers with him in court. He stated that without a record to that effect, he could not "definitively say on what date somebody may have said something."

Defendant argues that the trial court's exclusion of evidence from prior counseling sessions between the Misenheimers and McFarland precluded him from establishing plaintiff "discovered" the affair on an earlier date. The trial court reviewed McFarland's notes and determined the notes contained no references during the time frames specified by defendant that would establish an earlier "discovery date" by plaintiff of the affair between defendant and Mrs. Misenheimer.

The trial court stated:

Let the record reflect that the court has reviewed in camera [sic] the records of Dr. McFarland. And after reviewing those records in camera, the court will not allow any inquiry about . . . any statements that occurred in sessions in September or October of '96, finding there's no basis that that [sic] would have anything to do with the evidence that's been presented by the plaintiff in his claim of notice of possible adultery between the defendant, Clayton Burris, and the plaintiff's spouse, Rebecca Misenheimer.

These records were also submitted to this Court *in camera*. We have reviewed those records and have determined, as did the trial court, that nothing in the records specifically support defendant's con-

tention that plaintiff had knowledge of the affair prior to April 1997, the start date of the statute of limitations. Plaintiff properly asserted his clergy-communicant privilege for his counseling sessions with McFarland under N.C. Gen. Stat. § 8-53.2. His assertion is absolute concerning statements he made during counseling. *Miller,* 357 N.C. at 330, 584 S.E.2d at 783. Plaintiff could assert or waive in part the privilege regarding his statements. N.C. Gen. Stat. § 8-53.2; *State v. Andrews,* 131 N.C. App. 370, 375, 507 S.E.2d 305, 309 (1998), *disc. rev. denied,* 350 N.C. 100, 533 S.E.2d 471.

Further, plaintiff's counsel asked McFarland to identify Mrs. Misenheimer in the courtroom to demonstrate for the record that she was present in court. Defendant could have called Mrs. Misenheimer as a witness and inquired of her whether and when she had told plaintiff of her affair with defendant. Defendant could have elicited the evidence he sought to obtain from McFarland without seeking a further waiver of plaintiff's clergy-communicant privilege.

Defendant has failed to show he suffered prejudice from his inability to examine McFarland regarding all counseling sessions with plaintiff. This assignment of error is overruled.

## V. Conclusion

After an *in camera* review of McFarland's notes, we agree with the trial court that the notes contain nothing that would specifically support defendant's contention that plaintiff had knowledge of the affair prior to April 1997. Defendant failed to show he suffered prejudice from the trial court's ruling to not permit him to examine McFarland regarding all counseling sessions between McFarland and the Misenheimers after plaintiff asserted his privilege.

No Error.

Judges GEER and STEPHENS concur.